# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ANDREA and RUSSELL AMIDON,
as Next Friends of their son,
RICHARD AMIDON,

          Plaintiffs,                       Case No. 04-75003

v.                                  Hon. Gerald E. Rosen

STATE OF MICHIGAN, *et al.,*

          Defendants.
_____/

## OPINION AND ORDER REGARDING
## DEFENDANTS' MOTIONS TO DISMISS

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     March 17, 2008

PRESENT:  Honorable Gerald E. Rosen
                United States District Judge

## I. INTRODUCTION

Plaintiffs Andrea and Russell Amidon, on behalf of their son Richard, commenced

this action in this Court on December 23, 2004, alleging that the Defendants —

comprising three Michigan school districts and their corresponding boards of education,

an intermediate school district, over thirty school officials and employees, and the State

of Michigan — failed to meet Richard's educational needs over a ten-year period dating

back to 1994. Based on these allegations, Plaintiffs have asserted federal claims under

the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.,* and 42 U.S.C. § 1983, as well as state-law claims of gross negligence and disability discrimination in violation of Michigan's Persons with Disabilities Civil Rights Act ("PDCRA"), Mich. Comp. Laws § 37.1101 *et seq.* Prior to the commencement of this suit, Plaintiffs had filed a similar action in this Court on September 17, 2003 — albeit with fewer claims and without naming any individuals as defendants — but then stipulated to the dismissal of this earlier suit without prejudice on October 27, 2004.

Through the present motions, filed in accordance with a briefing schedule set by the Court in a January 5, 2006 order, Defendants seek the dismissal of all of the claims asserted in Plaintiffs' first amended complaint. Although Defendants identify a number of grounds for dismissal, their motions focus principally upon Plaintiffs' failure to satisfy the administrative exhaustion requirement set forth in the federal IDEA. Defendants further assert that this lack of exhaustion warrants the dismissal of all of Plaintiffs' claims, even those that do not arise under the IDEA. In response, Plaintiffs argue that their allegations bring this case within one or more of the recognized exceptions to the IDEA requirement of administrative exhaustion.

The various Defendants' motions have been fully briefed by the parties. Having reviewed the briefs in support of and opposition to these motions, as well as the remainder of the record, the Court finds that the relevant allegations, facts, and legal

arguments are adequately presented in these written materials, and that oral argument would not aid the decisional process.  Accordingly, the Court will decide Defendants' motions "on the briefs."  <u>See</u> Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan.  For the reasons set forth below, the Court readily concludes that Plaintiffs' federal claims are subject to dismissal for lack of exhaustion, where the available administrative processes and remedies would be neither futile nor inadequate under the circumstances of this case.

## II.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

While certain of Defendants' pending motions are captioned as seeking dismissal or, in the alternative, summary judgment, the pertinent record before the Court consists almost exclusively of the allegations of Plaintiffs' complaint, and the Court deems it unnecessary to look beyond the complaint in order to resolve the present motions. Accordingly, the following account is based upon the complaint's allegations, which are taken as true for present purposes.

During the relevant time period from 1994 to 2004, Richard Amidon has attended public schools in the Pontiac, Clarkston, and Waterford school districts.  Each of these districts has been named as a defendant, along with their respective school boards and numerous individual officials and employees of these districts.  Also named as defendants are:  (i) Oakland Schools, an intermediate school district that provides programs and services to the local districts within Oakland County, Michigan; (ii) John T. Cass, who

allegedly was employed by Oakland Schools;[1] and (iii) the State of Michigan.

According to the first amended complaint, on or around November 10, 1994, certain of the defendants were "put on notice" that Richard "potentially had a learning disability and/or dyslexia." (First Amended Complaint at ¶ 14.)[2]  At that time, Richard was referred to Oakland Schools for an "Early Intervention for Student at Risk."  (Id. at ¶ 15.)[3]  Despite this referral, Defendants "failed to adequately identify [Richard's] learning disability and/or dyslexia."  (Id. at ¶ 18.)  As a result, Defendants did not prepare any Individualized Education Programs ("IEPs") for Richard's education, nor did they provide Richard with a free appropriate public education ("FAPE") as required under the federal IDEA.  (Id. at ¶¶ 19-20.)

Through the years that followed, Defendants "ignored [Richard's] disabilities, promoting him through the school systems, regardless of his grades and/or ability scores." (Id. at ¶ 21.)  Although Plaintiffs "repeatedly requested" that Defendants evaluate their son Richard for learning disabilities, Defendants "refused these requests for evaluation." (Id. at ¶¶ 23-24.)  Rather, Richard's learning disabilities first came to light in June of 2002, when Plaintiffs "arranged for an independent psychological evaluation [of Richard]

---

[1]Oakland Schools denies, however, that Mr. Cass was ever an employee.

[2]Although the complaint in the present case does not indicate what grade Richard was in at the time, it appears from the record in Plaintiffs' prior suit that he would have been a third grader in November of 1994.

[3]Again, Oakland Schools denies that it was ever called upon to provide services to Richard.

at their own expense."  (Id. at ¶ 25.)  This evaluation revealed that Richard had an I.Q. of

121, but that he suffered from dyslexia and had a "reading level in the 10th percentile for

his age group."  (Id. at ¶ 27.)  Richard "also has been diagnosed with sytopic syndrome

and strabismus, both disabilities that affect his ability to read."  (Id. at ¶ 28.)

In June of 2003, the Waterford School District prepared a "504 plan" for Richard.

(Id. at ¶ 30.)[4]  This plan, however, "ignored [Richard's] dyslexia and special needs"

associated with this condition, and Plaintiffs were "specifically told" that no assistance

would be provided for this condition.  (Id. at ¶¶ 31-32.)  Richard "continued to struggle in

school," and dropped out of school altogether in October of 2004, (id. at ¶ 33), shortly

before the present suit was brought in December of 2004.

Based on these allegations, Plaintiffs have asserted federal claims under the IDEA,

the ADA, the Rehabilitation Act, and 42 U.S.C. § 1983, as well as state-law claims of

gross negligence and disability discrimination in violation of Michigan's PDCRA.

Plaintiffs' IDEA claim rests upon the premise that Defendants breached a duty to

"recognize and accurately appraise [Richard's] disabilities," (First Amended Complaint at

¶ 43), and thereby failed to develop the requisite IEPs or provide Richard with a FAPE.

In support of their claims under the ADA and the Rehabilitation Act, Plaintiffs assert that

Defendants denied Richard the benefits of their programs and services "solely by reason

_____

[4]A "504 plan" is a plan developed in accordance with section 504 of the Rehabilitation
Act, 29 U.S.C. § 794, which is intended to ensure that a school district accommodates a student's
disabilities.

of" or "based solely upon" Richard's disabilities, (id. at ¶¶ 56, 62), and that they also failed to reasonably accommodate these disabilities, (id. at ¶ 57). Plaintiffs' § 1983 claim, finally, rests upon the premise that Defendants violated Plaintiffs' and their son's constitutionally protected right to procedural due process by "failing to notify Plaintiffs of their procedural rights" under the IDEA and other laws. (Id. at ¶ 73.)

As noted earlier, Plaintiffs filed a similar suit in this Court in September of 2003, asserting only a federal § 1983 claim and a state-law claim of gross negligence, and naming as defendants only the school districts and school boards, but not any individuals (or the State of Michigan). The defendants in that case promptly moved for dismissal on a number of grounds, including failure to exhaust administrative remedies, and Plaintiffs moved to amend their complaint, largely in order to add the individuals who have been named as defendants in the present action. Following a October 12, 2004 status conference, during which the Court and counsel discussed the pending motions and other matters, the parties stipulated to dismiss the case without prejudice, with the Court's October 27, 2004 order of dismissal providing (i) that Plaintiffs had sixty days to refile the suit, and (ii) that the statute of limitations was tolled during this 60-day period. Plaintiffs exercised this option to re-file, commencing the present action on December 23, 2004.[5]

---

[5]At the October 12, 2004 status conference, the Court expressed serious doubts about the viability of Plaintiffs' proposed amendments to their complaint. Under these circumstances, it is difficult to view Plaintiffs' re-filing of the present suit — with, of course, many of the same allegations (and additional parties) that Plaintiffs sought leave to add to their earlier complaint — as anything other than an attempt to circumvent the Court's anticipated ruling on Plaintiffs'

## III. ANALYSIS

**A.    The Standards Governing Defendants' Motions**

Defendants' several pending motions have been brought under Fed. R. Civ. P. 12(b)(6).[6]  When considering a motion to dismiss under this Rule for failure to state a claim upon which relief can be granted, the Court is required to accept as true the well-pleaded factual allegations set forth in Plaintiffs' complaint.  Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976).  However, the Court "need not accept as true legal conclusions or unwarranted factual inferences."   Morgan, 829 F.2d at 12.

In the aftermath of the Supreme Court's recent decision in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Sixth Circuit has explained that a plaintiff's allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  League of United Latin American Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007).  "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory."

---

motion to amend.  The Court emphasized precisely this point in its April 19, 2005 order in the present suit, but it bears repeating here.

[6]In the alternative, certain of the Defendants seek awards of summary judgment under Fed. R. Civ. P. 56.  Yet, the principal legal challenge advanced in Defendants' motions — *i.e.,* the purported failure to exhaust administrative remedies — rests entirely upon Plaintiffs' complaint alone, and Defendants largely eschew any reliance on materials outside the pleadings.  Thus, the Court will treat Defendants' motions as brought exclusively under Rule 12(b)(6).

League of United Latin American Citizens, 500 F.3d at 527.  The Court will apply these standards in resolving Defendants' motions.

**B.      Plaintiffs' Federal Claims Are Subject to Dismissal for Failure to Satisfy the IDEA Requirement of Administrative Exhaustion.**

Although they advance a number of other arguments in their motions, Defendants focus primarily upon Plaintiffs' acknowledged failure to pursue any administrative remedies, as is ordinarily required under the IDEA before bringing suit.  While there are recognized exceptions to the IDEA requirement of administrative exhaustion, Defendants contend that no such exceptions are applicable under the allegations of Plaintiffs' complaint.  Defendants further assert that Plaintiffs' failure to satisfy the IDEA exhaustion requirement is fatal not only to their IDEA claim, but also to their other federal claims, and perhaps their state-law claims as well.  The Court agrees, at least as to Plaintiffs' federal claims, but declines to address the viability of Plaintiffs' remaining claims arising under Michigan law.

**1.      The Pertinent Provisions of the IDEA**

The IDEA conditions a state's receipt of federal funding upon the state's development and implementation of policies and procedures ensuring that "[a] free appropriate public education is available to all children with disabilities."  20 U.S.C. § 1412(a)(1)(A); see also Board of Education v. Rowley, 458 U.S. 176, 180-81, 102 S. Ct. 3034, 3037 (1982).  The central means by which a state provides this education is through the development of an "individualized education program" ("IEP") that is tailored to the

unique needs of a particular child. 20 U.S.C. § 1412(a)(4); <u>see also</u> <u>Rowley</u>, 458 U.S. at

181, 102 S. Ct. at 3038. A state also is obligated, as a condition to its receipt of federal

funds, to implement "child find" policies and procedures that ensure that children with

disabilities "who are in need of special education and related services" are "identified,

located, and evaluated." 20 U.S.C. § 1412(a)(3)(A); <u>see also</u> <u>Board of Education v. L.M.</u>

<u>ex rel.</u> <u>T.D.</u>, 478 F.3d 307, 313 (6th Cir. 2007).

Beyond these and other substantive obligations, the IDEA mandates that states and

local school districts "shall establish and maintain procedures . . . to ensure that children

with disabilities and their parents are guaranteed procedural safeguards with respect to the

provision of free appropriate public education." 20 U.S.C. § 1415(a). This section of the

Act then specifies the requisite procedures and safeguards, including various forms of

notice, mechanisms for presenting and pursuing administrative complaints, and the

opportunity to request a due process hearing before a state or local educational agency.

<u>See</u> 20 U.S.C. § 1415(b)-(h).

Next — and of particular relevance here — the IDEA includes two provisions

which, read together, have been construed by the courts as mandating the exhaustion of

administrative remedies as a precondition to suit. The first of these provisions authorizes

a party who is "aggrieved by the findings and decision made" in an administrative

proceeding conducted pursuant to the Act to bring a civil suit in either state or federal

district court. 20 U.S.C. § 1415(i)(2)(A). The second provision states:

> Nothing in this chapter shall be construed to restrict or limit the

rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 . . . , title V of the Rehabilitation Act of 1973 . . . , or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

"Every court that has considered the question has read this statutory scheme as a requirement for the exhaustion of administrative remedies."  Crocker v. Tennessee Secondary School Athletic Ass'n, 873 F.2d 933, 935 (6th Cir. 1989).  This scheme "clearly contemplates that plaintiffs will exhaust their administrative remedies before bringing a civil action to enforce their rights under the IDEA."  Covington v. Knox County School System, 205 F.3d 912, 915 (6th Cir. 2000) (footnote omitted).  Moreover, the second of these provisions dictates "that plaintiffs must exhaust their administrative remedies before bringing suit in federal court to obtain relief that is also available under the IDEA," Covington, 205 F.3d at 915 (footnote omitted), even if this plea for relief is grounded in some federal law other than the IDEA.

The Sixth Circuit has further observed:

The policies underlying this exhaustion requirement are both sound and important.  States are given the power to place themselves in compliance with the law, and the incentive to develop a regular system for fairly resolving conflicts under the Act.  Federal courts — generalists with no expertise in the educational needs of handicapped students — are given the benefit of expert factfinding by a state agency devoted to this very purpose.  Such a mechanism is necessary to give effect to a fundamental

policy underlying the EHA:[7]  that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education.  Were federal courts to set themselves up as the initial arbiters of handicapped children's educational needs before the administrative process is used, they would endanger not only the procedural but the substantive purposes of the Act.  And both states and the federal government have a recognized interest in providing enforcement of the Act that is not only just but efficient.

Crocker, 873 F.2d at 935 (internal quotation marks and citations omitted).

In this case, Plaintiffs do not allege or otherwise contend that they pursued any of the administrative remedies that the State of Michigan and the defendant local school districts are obligated to offer under the IDEA.  Nonetheless, as Plaintiffs point out, "exhaustion is not required under the IDEA in certain circumstances," Covington, 205 F.3d at 917, and Plaintiffs appeal to two such exceptions here.  First, Plaintiffs have alleged that, under the particular circumstances of this case, exhaustion of their administrative remedies would be "futile or inadequate to protect" the rights and interests of Plaintiffs and their son.  Covington, 205 F.3d at 917.  Next, Plaintiffs contend that their failure to pursue administrative remedies should be excused because they "were not given full notice of their procedural rights under the IDEA."  Covington, 205 F.3d at 917.  The Court considers each of these potential exceptions in turn.

> **2.** **Plaintiffs' Allegations Do Not Establish That It Would Have Been Futile to Pursue the Administrative Remedies That Were Available at the Time They Commenced This Litigation.**

---

[7]This reference to the "EHA" denotes the Education of the Handicapped Act, a statutory predecessor to the current IDEA.

Turning first to the "futility" exception to the IDEA's requirement of administrative exhaustion, Plaintiffs point to the decision in <u>Covington</u> as particularly instructive here. In that case, plaintiff Burma Covington asserted claims under 42 U.S.C. § 1983 on behalf of her disabled son, Jason, alleging that the defendant school district and school officials had used unlawful disciplinary measures against Jason, including repeatedly locking him in a "time-out room" for "several hours at a time without supervision." <u>Covington</u>, 205 F.3d at 913. Based on these allegations, Covington sought an award of monetary damages for the physical and emotional injuries suffered by Jason as a result of these disciplinary measures. Although "the complaint did not allege violations of, or even mention, the IDEA," the defendants sought dismissal of the case, and the district court granted this request, on the ground that Covington had not fully exhausted her administrative remedies before bringing suit. 205 F.3d at 914.

The Sixth Circuit reversed, holding that exhaustion would be futile. At the outset of its analysis, the court assumed, without deciding, that the IDEA's exhaustion requirement was applicable to Covington's § 1983 claims.[8] The court then rejected the

---

[8]As the court observed, "several courts have held that exhaustion is required when plaintiffs bring § 1983 suits based on violations of the IDEA." 205 F.3d at 915 (citing cases). "Additionally, some courts have held that whenever a claim falls within the purview of the IDEA — that is, whenever it relates to the provision of a 'free appropriate public education' to a disabled child [—] exhaustion is required, whether or not the plaintiff characterizes the claim as one arising under the IDEA." 205 F.3d at 915-16 (citing cases). Nonetheless, in light of its determination that "exhaustion would be futile in Covington's case," the court declined to decide "whether Covington's complaint falls within the ambit of the IDEA or whether a plaintiff who has stated a claim independent of the IDEA must still utilize the state's administrative process before filing in federal court." 205 F.3d at 916.

notion that Covington's "damages claim alone excuses her from exhausting her administrative remedies," citing the consensus among "most courts" that "a plaintiff seeking money damages is required to exhaust administrative remedies under the IDEA, even if money damages are not available under the IDEA or through the administrative process." 205 F.3d at 916 (citing cases).[9]  Nonetheless, the court held that Covington's § 1983 claims could go forward despite her failure to exhaust her administrative remedies:

> Although we agree with those courts that have decided that a mere claim for money damages is not sufficient to render exhaustion of administrative remedies unnecessary, we hold that in the unique circumstances of this case — in which the injured child has already graduated from the special education school, his injuries are wholly in the past, and therefore money damages are the only remedy that can make him whole — proceeding through the state's administrative process would be futile and is not required before the plaintiff can file suit in federal court. Thus, as one court has stated, "[a]lthough exhaustion cannot be waived whenever a plaintiff seeks monetary damages rather than relief that is available under the administrative scheme, where there is no administrative remedy for a wrong that the plaintiff has suffered, exhaustion is futile and may be waived." *Plasencia v. California,* 29 F. Supp.2d 1145, 1150 (C.D. Cal. 1998) (citing *W.B. v. Matula,* 67 F.3d 484 (3d Cir. 1995)).  *See also Matula,* 67 F.3d at 495-96 (holding that exhaustion is not required for plaintiffs seeking money damages, because damages are unavailable through the administrative process, and because all other relief available to the plaintiffs under the IDEA had already been provided through a settlement agreement).  Similarly, the United States Court of Appeals for the Ninth Circuit recently held in *Witte v. Clark County School District,* 197 F.3d 1271 (9th Cir. 1999), that the plaintiff, who was seeking monetary damages for physical and verbal abuse by special education school officials, was not required to exhaust formal administrative remedies, because the parties had already informally agreed to provide the injured child with all

---

[9]Again, the court noted that it had yet to weigh in on this latter question, but had held in prior cases only that monetary relief under the IDEA is limited to reimbursement for educational expenses, as opposed to more general awards of compensatory damages.  205 F.3d at 916 n.6.

"remedies that are available under the IDEA," *see id.* at 1276. Furthermore, the *Witte* court noted that the relief sought for the plaintiff's injuries was "retrospective only" and that the relief available under the IDEA was not well-suited to remedying past instances of physical injury. *See id.*

In Jason's case, as in *Plasencia,* "the condition creating the damage has ceased," and there is no equitable relief that would make Jason whole. *Plasencia,* 29 F. Supp.2d at 1152 . . . .

Covington, 205 F.3d at 917-18.

In so ruling, the Sixth Circuit distinguished its prior decision in Doe v. Smith, 879

F.2d 1340 (6th Cir. 1989):

In *Doe v. Smith,* we held that parents may not avoid the state administrative process through "the unilateral act of removing their child from a public school." *Id.* at 1343. There was no showing in that case that following the school system's administrative procedure would have been futile; indeed, the relief sought by the plaintiff in *Doe v. Smith* — a more appropriate educational placement, provided at public expense — is precisely the kind of relief that the state administrative process is equipped to afford. *See id.* at 1341-42. Therefore, *Doe v. Smith* is inapplicable to a case such as Covington's, where the administrative process would be incapable of imparting appropriate relief due to the nature of Jason's alleged injuries and the fact that he has already graduated from the special education school, not due to Covington's unilateral act.

Covington, 205 F.3d at 918.

In Plaintiffs' view, this case is "strikingly similar" to Covington, where their son

Richard has dropped out of school and his "damages are wholly and entirely in the past."

(Plaintiffs' Response Br. at 6.) Under these circumstances, Plaintiffs contend that

Richard's injuries are beyond the power of an administrative process to remediate, where

the available administrative relief would be limited to compensatory educational services,

reimbursement of educational expenses, and the like. Here, in contrast, Plaintiffs suggest

14

that the only meaningful relief would be an award of monetary damages as compensation for the harm suffered by Richard, both in the past and extending into the future,[10] as a result of Defendants' alleged failure to identify his disabilities and provide appropriate educational services. It follows, in Plaintiffs' view, that Covington's finding of futility is fully applicable here.

Despite some limited similarities between Covington and this suit, the Court finds that the two cases differ in crucial respects, such that it would not have been futile for Plaintiffs to have pursued their administrative remedies before commencing this litigation. First and foremost, it must be recalled that, while the present action was nominally commenced in December of 2004, this litigation actually dates back to September of 2003, when Plaintiffs filed their initial suit challenging the Defendant school districts' alleged failure to recognize their son's disabilities and provide appropriate educational services. Indeed, Plaintiffs make precisely this point in a brief in opposition to a statute of limitations challenge advanced by the Defendant State of Michigan, stating that "[t]his case was originally filed on September 17, 2003 and subsequently refiled pursuant to a Stipulated Order for Dismissal agreed to by and between the parties." (Plaintiffs' 2/27/2006 Response Br. at 16.)

Under these circumstances, it is not true here, as it was in Covington, that Richard's injuries were "wholly in the past" at the time his parents commenced this

---

[10]As to the latter, Plaintiffs' request for compensatory damages encompasses, for example, the loss of future earnings as a result of the deficiencies in Richard's education.

litigation. Plaintiffs' complaint in the initial suit expressly alleges that Richard "continue[s] to struggle in school up to and including today's date." (Case No. 03-73573, 9/17/2003 Complaint at ¶ 10.) Furthermore, while Plaintiffs complain of Defendants' untimely and extremely delayed recognition that Richard suffered from disabilities, they acknowledge in their complaints, both in the present and prior suits, that Richard eventually was diagnosed in June of 2002 as suffering from dyslexia and other conditions, and that the Waterford school district subsequently developed a "504 plan" in June of 2003 to address Richard's disabilities (albeit inadequately, in Plaintiffs' view). In light of Plaintiffs' allegations of ongoing injuries at the time they filed their initial suit in September of 2003, and in light of the ongoing effort, however inadequate, to formulate an educational plan to account for at least some of Richard's disabilities, it cannot be said that it would have been futile to pursue an administrative process that presumably could have provided Richard with compensatory educational services and additional services going forward. Rather, the administrative mechanisms mandated by the IDEA still afforded an opportunity for relief, at least until Richard dropped out of school over a year later, in October of 2004. Plaintiffs have not cited any authority, and the Court is not aware of any, for the proposition that futility should be measured in light of developments *during* the litigation, as opposed to the circumstances as they existed at its *inception*.

Moreover, while the court in Covington found that the Sixth Circuit's earlier Doe decision was distinguishable on two grounds, neither of these distinctions is present here. First, after citing Doe for the proposition that "parents may not avoid the state

16

administrative process through 'the unilateral act of removing their child from a public school,'" Covington, 205 F.3d at 918 (quoting Doe, 879 F.2d at 1343), the Covington court then observed that the child in that case had "already graduated from the special education school, not due to Covington's unilateral act." Covington, 205 F.3d at 918. Here, in contrast, Plaintiffs' son Richard removed himself from school through the unilateral act of dropping out. Next, the Covington court observed that the relief sought in Doe — "a more appropriate educational placement provided at public expense" — was "precisely the kind of relief that the state administrative process is equipped to afford," while "the nature of [the] alleged injuries" in Covington would have been beyond the capacity of an administrative process to remediate. Covington, 205 F.3d at 918. Again, the present case is far more akin to Doe than Covington, where Richard's alleged injuries are entirely attributable to purported deficiencies in his educational program — and, hence, could be addressed through an adjusted program of educational services — in contrast to the tort-based physical and emotional injuries inflicted upon the student in Covington.

Under facts comparable to those presented here — as opposed to the distinct and "unique circumstances" confronted by the court in Covington, 205 F.3d at 917 — several courts have required the exhaustion of administrative remedies before allowing IDEA and related claims to go forward. In Frazier v. Fairhaven School Committee, 276 F.3d 52 (1st Cir. 2002), for example, the plaintiffs sought to recover monetary damages under § 1983 for a number of incidents throughout their daughter's high school years that allegedly

17

resulted in a deprivation of her right to a free appropriate public education. The plaintiffs

acknowledged that they had not pursued their administrative remedies but argued that it

would have been futile to do so, where they had asserted a claim under § 1983, not the

IDEA, and sought only money damages, and where their daughter had already graduated,

so that "the administrative process c[ould] do nothing to ameliorate the bungling that

marred her educational experience." Frazier, 276 F.3d at 59-63.

The First Circuit upheld the district court's dismissal of the plaintiffs' § 1983

claim for failure to exhaust their administrative remedies. In so ruling, the court first

surveyed the benefits of invoking the IDEA-mandated administrative process before

allowing resort to the courts, and then rejected the plaintiffs' contention that these usual

advantages cannot be realized in cases where a party seeks a form of relief that lies

outside the universe of available administrative remedies:

> The plaintiffs concede these benefits — but they say that their value
> evaporates where, as here, a claimant seeks a remedy that the administrative
> machinery cannot provide. We do not agree. Exhaustion is beneficial
> regardless of whether the administrative process offers the specific form of
> remediation sought by a particular plaintiff. After all, the administrative
> process facilitates the compilation of a fully developed record by a
> factfinder versed in the educational needs of disabled children — and that
> record is an invaluable resource for a state or federal court required to
> adjudicate a subsequent civil action covering the same terrain. Fidelity to
> the IDEA's exhaustion requirement ensures such an outcome.

> * * * *

> This result is all the more attractive when one considers the practical
> consequences of allowing the plaintiffs to pursue their section 1983 claim
> without first exhausting the IDEA's administrative process. That course of
> action would allow a plaintiff to bypass the administrative procedures

merely by crafting her complaint to seek relief that educational authorities are powerless to grant. This would subvert not only the very existence of a mandatory exhaustion requirement but also the overall scheme that Congress envisioned for dealing with educational disabilities.

Frazier, 276 F.3d at 61-63.

Turning next to the plaintiffs' contention that exhaustion would be futile because their daughter had already graduated, the court disagreed on two grounds:

First, even after graduation, compensatory education is an available remedy. Second — and more importantly — the entire matter of timing is largely within a plaintiff's control. The IDEA provides a comprehensive remedial scheme, and the plaintiffs could have invoked it at any of several different points during [their daughter's] high school years. It would be a hollow gesture to say that exhaustion is required — and then to say that plaintiffs, by holding back until the affected child graduates, can evade the requirement. As the district court aptly observed, permitting a plaintiff to proceed with an IDEA-based claim for money damages under another federal statute without first exhausting administrative remedies

might simply encourage plaintiffs to wait to dispute the adequacy of their educational programs until after graduation precisely in the hope of recovering money damages. This would mean that plaintiffs would not actually address educational issues when they occur — a situation directly at odds with the IDEA's primary goal of ensuring the education of children with disabilities.

276 F.3d at 63 (quoting Frazier v. Fairhaven School Committee, 122 F. Supp.2d 104, 111 (D. Mass. 2000)) (footnote omitted).

Similarly, in Polera v. Board of Education, 288 F.3d 478 (2d Cir. 2002), the Second Circuit held that plaintiff Santina Polera's claims under the ADA and the Rehabilitation Act arising from deficiencies in her education were subject to dismissal for failure to exhaust administrative remedies, despite (i) the absence of any claim brought

under the IDEA, (ii) Polera's plea for compensatory and punitive damages that could not be awarded under the IDEA, and (iii) Polera's graduation and complaints of only past, not ongoing, conduct. With regard to the first two of these points — *i.e.,* Polera's election not to bring an IDEA claim and her request for money damages — the court explained:

> The IDEA is intended to remedy precisely the sort of claim made by Polera: that a school district failed to provide her with appropriate educational services. The fact that Polera seeks damages, in addition to relief that is available under the IDEA, does not enable her to sidestep the exhaustion requirements of the IDEA. Where, as here, a full remedy is available at the time of injury, a disabled student claiming deficiencies in his or her education may not ignore the administrative process, then later sue for damages. Therefore, we hold that, absent an applicable exception, Polera was required to exhaust her administrative remedies.

Polera, 288 F.3d at 488; see also Charlie F. v. Board of Education, 98 F.3d 989, 992 (7th Cir. 1996) (explaining that "the theory behind [a disabled student's] grievance may activate the IDEA's process, even if the plaintiff wants a form of relief that the IDEA does not supply"); Mallory v. Knox County School District, No. 06-122, 2006 WL 3484015, at *5 (E.D. Tenn. Nov. 30, 2006) (finding that the IDEA exhaustion requirement applied to the plaintiffs' § 1983 claim where their complaint was "replete with allegations dealing with defendants' responsibilities under the IDEA"); Franklin v. Frid, 7 F. Supp.2d 920, 925 (W.D. Mich. 1998) (finding that the plaintiffs' § 1983 claim was subject to the IDEA exhaustion requirement where this claim was "steeped in allegations referring to the IDEA itself and to Defendants' compliance or non-compliance with their obligation to provide a free and appropriate public education, the touchstone of the IDEA").

The court then turned to (and rejected) Polera's argument, in reliance on

Covington, that administrative exhaustion would be futile in light of her graduation:

> Despite certain similarities between *Covington* and the instant case — both Polera and the plaintiff in *Covington* had already graduated and complain of past, not ongoing, conduct — Polera's claim is distinguishable from the "unique circumstances" of *Covington* . . . . Although the Sixth Circuit focused on the fact that the plaintiff student had graduated, damages would have been the only adequate remedy even had he sought immediate relief at the time of the wrongdoing. Nothing could "undo" the harm that he had suffered. In contrast, had Polera pursued administrative procedures at the time of the alleged wrongdoing, she could have obtained the materials she needed and, perhaps, remedial tutoring or schedule adjustments to undo the effects of the wrong. For Polera, unlike the plaintiff in *Covington,* a fully effective remedy was available at the time; she simply chose not to pursue it.

Polera, 288 F.3d at 490; see also S.E. v. Grant County Board of Education, 522 F.

Supp.2d 826, 832-33 (E.D. Ky. 2007) (rejecting a claim that exhaustion would be futile

because the parents had withdrawn their child from the public schools and were home-

schooling her); Allensworth-Cannaday v. Windham Exempted Village School District,

No. 07-01109, 2007 WL 3129818, at *6 (N.D. Ohio Oct. 23, 2007) (observing that

although the plaintiff was near graduation, "the Court is not convinced that the Plaintiffs

did not have and now do not have enough time to exhaust their administrative remedies

before proceeding to court"); Mallory, 2006 WL 3484015, at *7 (holding that exhaustion

was required even though the plaintiffs' daughter no longer attended the defendant school

district but instead was being home-schooled); Oliver v. Dallas Independent School

District, No. 01-2627, 2004 WL 1800878, at *5 (N.D. Tex. Aug. 11, 2004) (holding that

the plaintiff's "graduation does not excuse exhaustion of administrative remedies"

because she was still in school when "the failures of [the defendants] giving rise to this litigation began"); Franklin, 7 F. Supp.2d at 924 (holding that the plaintiffs were "bound to follow the administrative process regardless of whether [their son] remained in the [defendant] school system").

Upon careful review and consideration of Covington and the other above-cited decisions, as well as the additional case law identified by the parties, the Court readily concludes that the "unique circumstances" that led to a determination of futility in Covington simply are not present here. Plaintiffs' allegations here, as in Frazier and Polera, implicate the core concern of the IDEA: namely, to identify the needs of disabled students and ensure that they are provided with appropriate educational services. As explained in Polera, "[t]he IDEA is intended to remedy precisely the sort of claim made by [Plaintiffs]: that a school district failed to provide [their son] with appropriate educational services." Polera, 288 F.3d at 488. Indeed, Plaintiffs clearly recognize as much, as they have expressly asserted an IDEA claim in their complaint, based on the very same allegations that give rise to their other federal and state-law claims.

The allegations in Covington were of an entirely different character. While the defendants' alleged mistreatment of the plaintiff's son undoubtedly had a negative effect on his education, there could be no claim in that case that this harm could be overcome or ameliorated through a modified IEP, an award of compensatory educational services, or any of the other sorts of remedial relief that could be provided in an IDEA-based administrative process. As the Sixth Circuit recently explained, "[o]ur holding [in

Covington] was based not upon the fact that the plaintiff sought monetary damages, but on the fact that the IDEA did not provide a remedy for the type of harm allegedly suffered by plaintiff, which was more in the nature of a tort than a violation of a federal entitlement scheme."  Gean v. Hattaway, 330 F.3d 758, 774 (6th Cir. 2003).  Here, in contrast, Plaintiffs expressly allege in their complaint that the IDEA ***does*** provide a remedy for the harm suffered by their son.  It follows that the IDEA's exhaustion requirement applies here, notwithstanding Plaintiffs' assertion that some or all of the relief they seek could not be conferred in an administrative proceeding.

Beyond pointing to their plea for money damages, Plaintiffs contend that it is now too late to realize any of the potential benefits of the administrative process because their son is no longer in school.  Yet, as emphasized earlier, this was not the case when Plaintiffs commenced this litigation — and, in contrast to the graduation in Covington, Richard's withdrawal from school in this case was a "unilateral act."  Covington, 205 F.3d at 918.  Furthermore, even if this withdrawal were viewed as tantamount to graduation, Frazier, Polera, and the other above-cited cases persuasively explain why this alone does not render the administrative process futile, so long as Plaintiffs are alleging educational injuries of the sort that the IDEA-mandated administrative process is intended to address and ameliorate.  As explained earlier, the Court construes Plaintiffs' complaint as featuring precisely these sorts of allegations.  Consequently, Plaintiffs must exhaust the IDEA-mandated administrative remedies before seeking relief in court.

To be sure, the Court recognizes that Plaintiffs' claim of futility does not rest

solely upon Richard's withdrawal from school, but appears to be based in part upon the ever-diminishing prospect that meaningful education-based remedial relief could be fashioned to overcome years of Defendants' alleged failure to identify Richard's disabilities and provide appropriate educational services. Yet, the fact remains that these disabilities *were* identified while Richard was still in school and before Plaintiffs commenced this litigation. In addition, Plaintiffs acknowledge in their complaint that the Waterford school district made some effort, however inadequate, to devise and implement an educational plan that would account for Richard's disabilities.

At that crucial point, shortly before Plaintiffs commenced this litigation, it simply could not be said that the administrative process would have been altogether helpless to address the deficiencies in Richard's education and provide meaningful relief. As illustrated by the Sixth Circuit's recent decision in L.M., supra, 478 F.3d at 313-18, the IDEA-mandated administrative process remains available (and beneficial) in cases where a school district has breached its "child-find" obligation under the IDEA, and relief may be awarded through this process to address such a violation. While the IDEA-mandated administrative machinery might well be hard-pressed to devise a package of educational services or fashion some other form of relief that could overcome years of alleged failures to identify and address the impediments to Richard's learning, this process cannot be spurned merely because it might afford less-than-complete relief. Rather, the Court reads the governing IDEA provisions and relevant case law as requiring exhaustion of the administrative process under the circumstances of this case. Consequently, the Court

rejects Plaintiffs' contention that exhaustion would be futile.

### 3. Plaintiffs Had Adequate Notice of Available Administrative Remedies.

Apart from their claim of futility, Plaintiffs also appeal to the principle, as recognized in Covington, that exhaustion is not required "if the plaintiffs were not given full notice of their procedural rights under the IDEA." Covington, 205 F.3d at 917. Plaintiffs argue that this exception to the IDEA exhaustion requirement is applicable here, in light of their allegation that "Defendants never informed Plaintiffs of their procedural rights under the Act." (First Amended Complaint at ¶ 49.) In response, Defendants contend (i) that Plaintiffs took no actions that would have triggered Defendants' obligation to give the sorts of notice mandated by the IDEA, and (ii) that, in any event, Defendants' alleged failure to provide notice is overcome by Plaintiffs' actual notice of the availability of administrative remedies. While the Court cannot agree with the first of these propositions, it finds that Plaintiffs' actual notice of available administrative remedies triggered an obligation to exhaust these remedies before seeking judicial relief.

Under the pertinent IDEA provision, the defendant school districts were required to provide written notice to Plaintiffs whenever they "propose[d] to initiate or change" or "refuse[d] to initiate or change" the "identification, evaluation, or educational placement of" Plaintiffs' son, or the "provision of a free appropriate public education" to Plaintiff's son. 20 U.S.C. § 1415(b)(3). The requisite written notice was to include, among other items, a "description of the action proposed or refused" by the district, an "explanation of why the [district] propose[d] or refuse[d] to take the action," a "description of each

evaluation procedure, test, record, or report the agency used as a basis for the proposed or refused action," and a statement that Plaintiffs had "protection under the procedural safeguards" mandated by the IDEA. 20 U.S.C. § 1415(c). Apart from this general statement alerting Plaintiffs to the existence of procedural safeguards under the Act, the IDEA and its implementing regulations also required that the defendant school districts provide Plaintiffs with a list and description of these procedural safeguards (i) "upon initial referral for evaluation," (ii) "upon each notification of an individualized education program meeting and upon reevaluation of the child," and (iii) "upon registration of a complaint" brought by the parents. 20 U.S.C. § 1415(d)(1); see also 34 C.F.R. § 300.504(a).[11]

The Court reads the allegations of Plaintiffs' complaint as both (i) identifying events that would trigger the defendant school districts' obligation to provide written notice in accordance with the IDEA, and (ii) indicating that the districts did not comply with this obligation. According to the complaint, the defendant Pontiac school district referred Plaintiffs' son for an evaluation of his disabilities in November of 2004, but this evaluation failed to reveal Richard's "learning disability and/or dyslexia." (First Amended Complaint at ¶¶ 14-18.) These allegations, then, indicate that the school district initiated an evaluation of Richard but then declined to develop an IEP, evidently

[11]This statutory provision and corresponding regulation have recently been amended, with effective dates after Plaintiffs filed their most recent complaint. The Court deems it unnecessary to decide, however, what effect (if any) these amendments might have upon Plaintiffs' claims in this case, in light of the Court's determination that Plaintiffs have sufficiently alleged a failure of notice under the statute as it read when this suit was brought.

concluding that no such program was necessary in order to ensure that Richard received appropriate educational services. At that point, the district seemingly should have provided written notice that it had referred Richard for evaluation but determined that no action was needed. This written notice, in turn, would have alerted Plaintiffs to the procedural safeguards afford by the IDEA, including the "opportunity to present complaints" and the availability of an administrative review process. 20 U.S.C. § 1415(d)(2). Similarly, written notice arguably should have been provided on each occasion that Plaintiffs requested an evaluation of their son for learning disabilities but the defendant school districts refused this request.[12] Yet, as noted, Plaintiffs broadly allege that Defendants never informed them of their procedural rights under the IDEA.

Nonetheless, the courts have been reluctant to conclude that such a failure to provide notice exempts parents from the administrative process ordinarily mandated by the IDEA, so long as the parents had ***actual*** notice of the availability of this process. In Christopher W. v. Portsmouth School Committee, 877 F.2d 1089, 1097 (1st Cir. 1989), for example, the First Circuit addressed the plaintiff student's contention that he should be excused from the IDEA exhaustion requirement "because his parent was not informed of her right to a due process hearing." The court held that exhaustion was required

---

[12]The recent amendments to § 1415 and the corresponding regulation make this latter notice requirement somewhat more clear, as the statute and regulation now mandate that parents be provided with a copy of the procedural safeguards available under the IDEA whenever there is a "parental request for evaluation" of a child. 20 U.S.C. § 1415(d)(1)(A)(i) (2006); see also 34 C.F.R. 300.504(a)(1) (2007). The Court assumes, for present purposes, that a similar obligation was owed to Plaintiffs under the law in effect at the various times when they asked the defendant school districts to evaluate their son for learning disabilities.

despite this failure to provide notice, reasoning that the student "had retained an attorney early on in this controversy" and thus could not plausibly claim "ignorance as to [the] appropriate procedures to be followed." Christopher W., 877 F.2d at 1097. The court further observed that "subsequent to [his] filing the district court suit," the student was "on notice from several sources that he had failed to exhaust administrative remedies," where the defendant school district had pointed this out in its answer to the complaint and in a subsequent motion to dismiss. 877 F.2d at 1097. Under these circumstances, the court held that "the failure to specifically inform [the student's] parent of her right to a hearing" did not "warrant an exhaustion exception," but that such an exception should instead be limited to cases where "the state agency itself prevent[ed] exhaustion of administrative remedies." 877 F.2d at 1097.

The Sixth Circuit cited Christopher W. with approval in its unpublished decision in Donoho v. Smith County Board of Education, No. 00-5214, 21 F. App'x 293 (Aug. 9, 2001). In that case, notwithstanding a parent's claim in an affidavit that the defendant school board failed to inform her, on at least one occasion, of her procedural rights under the IDEA, the court concluded that "no reasonable fact-finder could find, based on the record, that [the parent] had no notice of her right to a due process hearing prior to filing her civil action." Donoho, 21 F. App'x at 298. In so ruling, the court pointed to the unchallenged evidence that the parent had received notice of her rights on other occasions, and further observed, in reliance on Christopher W., that "the complaint itself acknowledges the fact that there are administrative procedures it is attempting to bypass,

and also shows that [the parent and student] knew they were under a general duty to exhaust these procedures."  21 F. App'x at 298 & n.4.  Accordingly, the court affirmed the district court's dismissal of the suit for failure to exhaust administrative remedies.

Similarly, in Waterman v. Marquette-Alger Intermediate School District, 739 F. Supp. 361, 369 (W.D. Mich. 1990), the court held that the defendants' alleged violations of the plaintiffs' procedural rights under the EHA[13] — including a failure to notify the plaintiffs of their right to a hearing upon filing an administrative complaint — did not warrant an exception to the exhaustion requirement, where the administrative complaint was "filed for plaintiffs by sophisticated counsel completely familiar with the specific provisions of the Department of Education special education rules."  Under these circumstances, the court found that the plaintiffs should be charged with notice of their right to an administrative hearing, and concluded that they had deliberately "chose[n] not to request a hearing . . . for their own reasons."  Waterman, 739 F. Supp. at 369.  The court further explained that such a procedural violation "does not *ipso facto* excuse exhaustion," absent a showing that "exhaustion would be futile or inadequate."  739 F. Supp. at 369.  The court found that no such showing had been made in that case, where there was no indication of the defendants' "deliberate indifference to or active circumvention of plaintiffs' EHA rights," and thus was no reason to believe that a remand for a "substantive administrative decision . . . will prove futile."  739 F. Supp. at 369.

---

[13]As noted earlier, the EHA was one of the statutory predecessors to the present IDEA.

Here, too, the Court finds that Plaintiffs had sufficient actual notice of available administrative remedies, such that they should be required to pursue and exhaust these remedies despite Defendants' alleged failure to inform them of their procedural rights under the IDEA. It is evident from Plaintiffs' complaint in their initial 2003 suit — an action brought, as noted earlier, while Plaintiffs' son remained in school — that they were aware at that time of the procedural rights afforded to them under the IDEA. This complaint alleged, in particular, that the defendant school districts failed to give Plaintiffs notice of their rights under a variety of statutes, including the IDEA, and that Plaintiffs were entitled to, but were denied, "meaningful access to the process by which [Plaintiffs' son's] disability could be addressed." (Case No. 03-73573, 9/17/2003 Complaint at ¶¶ 19-22.) Indeed, the gravamen of Plaintiffs' initial suit was that they had been denied the due process rights and protections conferred under the IDEA and a number of other federal and state laws. Certainly, Plaintiffs could not have complained about deprivations of these rights absent their *awareness* of these rights. And, of course, by the time this prior action was filed, Plaintiffs were represented by counsel who undoubtedly was aware of the procedural rights afforded to parents under the IDEA.

Even if Plaintiffs could be said to have been unaware at the time of their 2003 suit of the availability of administrative avenues for addressing deficiencies in their son's education, they could not have remained so for long. In its December 1, 2003 answer to the complaint and an accompanying motion to dismiss, the defendant Clarkston school district expressly asserted that the 2003 action was subject to dismissal because Plaintiffs

had failed to exhaust their administrative remedies. Even assuming, then, that these submissions represented the first notice to Plaintiffs of the availability of an administrative process for challenging Defendants' decisions and actions, Plaintiffs still had a one-year window of opportunity to pursue such administrative remedies before the present action was filed on December 23, 2004. And, again, Plaintiffs state in their present complaint that their son remained in school throughout most of this period.

Finally, as was true in the above-cited cases, beyond their allegations of lack of notice, Plaintiffs here have not identified any affirmative conduct by any defendant school district or official that impeded or prevented their access to the usual administrative avenues for challenging Defendants' decisions about their son's education. Nor have Plaintiffs otherwise suggested how Defendants' alleged procedural violations might have rendered the administrative process futile or inadequate. Rather, these procedural violations and failures to provide notice at most operated to delay the onset of administrative proceedings. As discussed earlier, this does not altogether excuse any effort to seek the remedies that such an administrative process may provide, even at this late date.

In the end, while the circumstances of this case surely pose challenges to the IDEA-mandated administrative process, and while it would no doubt prove difficult to fashion relief that would wholly compensate for or overcome the alleged deficiencies in the education of Plaintiffs' son over a period of many years, the Court is not persuaded that the administrative process has nothing to offer and may be dispensed with as futile or

inadequate. Surely, this Court is not well positioned, in a vacuum of administrative findings made by state and local officials with educational expertise, to (i) ascertain the existence and extent of the disabilities suffered by Plaintiffs' son Richard, (ii) determine the nature and extent of the harm done to Richard's education as a result of the years of Defendants' alleged failures to identify these disabilities and provide appropriate educational services, and (iii) fashion a set of remedies for this harm. If the IDEA-mandated administrative process would struggle to provide suitable relief in these circumstances, this would be all the more true of a federal court called upon to decide the matter in the first instance and without the benefit of an administrative record. The Court concludes, therefore, that Plaintiffs must exhaust their administrative remedies before going forward with their IDEA claim in federal court.

### 4. Plaintiffs May Not Pursue Their Other Federal Claims Until They Exhaust Their Administrative Remedies.

It remains only to ask whether Plaintiffs' failure to satisfy the IDEA's requirement of administrative exhaustion warrants the dismissal of their other federal claims as well. The Court concludes that it does.

As an initial matter, the Court reads the IDEA's exhaustion provision as strongly suggestive, at least, of the conclusion that Plaintiffs must exhaust their administrative remedies before they may pursue their federal claims under the ADA, the Rehabilitation Act, and § 1983. As noted earlier, this provision states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the

> Americans with Disabilities Act of 1990 . . . , title V of the Rehabilitation
> Act of 1973 . . . , or other Federal laws protecting the rights of children with
> disabilities, except that before the filing of a civil action under such laws
> seeking relief that is also available under this subchapter, the procedures
> under subsections (f) and (g) of this section shall be exhausted to the same
> extent as would be required had the action been brought under this
> subchapter.

20 U.S.C. § 1415(l).  Plainly, then, to the extent that Plaintiffs' other federal claims "seek[] relief that is also available" under the IDEA, the Act's exhaustion requirement applies with full force.

It is immediately apparent from the face of Plaintiffs' complaint that they seek *identical* relief under each of their four federal theories of recovery.  Specifically, each of Plaintiffs' federal claims is accompanied by the very same plea for compensatory and punitive damages, costs and fees, and such "other and further relief as may be deemed just."  Moreover, each of these requests for compensatory damages rests in part upon the alleged denial of the "free and appropriate public education" to which Plaintiffs' son is entitled under the IDEA.  It is clear, therefore, that Plaintiffs' claims under the ADA, the Rehabilitation Act, and § 1983 seek "relief that is also available" under the IDEA — in part, if not in its entirety.  More generally, the Court already has observed that Plaintiffs' claims here, regardless of the federal or state law upon which they are based, rest upon a single set of allegations that implicate the IDEA's core concern:  namely, that students with disabilities are entitled to the educational services necessary to provide them with a free appropriate public education.

Under comparable circumstances, a number of courts have held that the IDEA's

33

exhaustion requirement must be satisfied before a plaintiff may seek to recover for educational injuries under other federal statutes. Several of the cases discussed or cited earlier in this opinion — including <u>Polera</u>, 288 F.3d at 486-88; <u>Frazier</u>, 276 F.3d at 60-63, <u>Charlie F.</u>, 98 F.3d at 991-93; <u>Mallory</u>, 2006 WL 3484015, at *5-*6; and <u>Franklin</u>, 7 F. Supp.2d at 925-26 — have reached precisely this conclusion, and have dismissed claims brought under § 1983, the ADA, and/or the Rehabilitation Act for failure to exhaust the administrative remedies mandated by the IDEA. As the Seventh Circuit explained in rejecting the contention that claims for money damages under § 1983, the ADA, and the Rehabilitation Act were exempt from the IDEA's exhaustion requirement, "[w]e read [the 'relief that is also available' language of § 1415(l)] to mean relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers." <u>Charlie F.</u>, 98 F.3d at 992.

The Court readily concurs in this uniform weight of authority. Whether or not Plaintiffs might be entitled to somewhat different or greater relief under their other federal theories of recovery than under the IDEA, the administrative process mandated by the IDEA still provides an opportunity to at least partially, if not entirely, redress the injuries suffered by Plaintiffs' son as a result of any violations of his constitutional rights, the ADA, or the Rehabilitation Act. That being the case, the Court finds that Plaintiffs' other federal claims seek "relief that is also available" under the IDEA, and that Plaintiffs therefore must satisfy the IDEA's exhaustion requirement before they may pursue any of

the federal claims asserted in their complaint.[14]

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that (i) the defendant State of Michigan's May 20, 2005 motion to dismiss, (ii) the January 25, 2006 motion to dismiss brought by the defendant Waterford and Pontiac school districts and various Waterford and Pontiac school officials, (iii) the January 31, 2006 motion to dismiss brought by the defendant Clarkston school district and various Clarkston school officials, and (iv) the defendant Oakland Schools' January 31, 2006 motion to dismiss are GRANTED IN PART, to the extent that these motions seek the dismissal of Plaintiffs' federal claims for failure to exhaust administrative remedies, and are otherwise DENIED AS MOOT.


s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  March 17, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 17, 2008, by electronic and/or ordinary mail.


s/LaShawn R. Saulsberry
Case Manager

---

[14]In light of this conclusion, the Court declines to address the other challenges to Plaintiffs' federal claims that Defendants have advanced in their motions.  Likewise, the Court does not reach Defendants' challenges to Plaintiffs' state-law claims, but instead elects to relinquish its supplemental jurisdiction over these claims now that Plaintiffs' federal claims have been dismissed.  See 28 U.S.C. § 1367(c)(3).